# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

CASE NO.:

BURGER KING CORPORATION,

    Plaintiff,

vs.

PAUL D. KESSLER, TEN TEN HOLDINGS, LLC, PDK KING OF LAKE ORION, LLC, PDK KING OF OXFORD, LLC, and PDK KING OF LAPEER, LLC,

    Defendants.

_____/

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Burger King Corporation ("BKC") files this Complaint for Injunctive Relief and Damages and sues Defendants Paul D. Kessler ("Kessler"), Ten Ten Holdings, LLC ("Ten Holdings"), PDK King of Lake Orion, LLC ("Lake Orion"), PDK King of Oxford, LLC ("Oxford"), and PDK King of Lapeer, LLC ("Lapeer") (collectively "Defendants"), and states:

    1.    This is an action to enjoin Defendants' unauthorized use of BKC's valuable trademarks and service marks in connection with the unlawful operation of restaurants located in Michigan as authorized BURGER KING® Restaurants, as well as for Lanham Act damages.[1] Additionally, this is an action for money damages for Defendants' breaches of written agreements with BKC arising out of Defendants' operation of BURGER KING® Restaurants

---

[1] BK # 6866 is no longer operating as a BURGER KING® Restaurant; however Defendants Oxford, Kessler and Ten Holdings have failed to de-identify this location pursuant to the terms of the written agreements with BKC.

located in Michigan.

## I. THE PARTIES

2. Plaintiff BKC is a Florida corporation with its principal place of business in Miami, Florida.

3. Defendant Kessler is a citizen and resident of the state of Michigan.

4. Defendant Ten Holdings is a Michigan limited liability company with its principal place of business in the state of Michigan. Upon information and belief, the members of Ten Holdings are Paul D. Kessler as Trustee of the Paul D. Kessler Revocable Living Trust and PDK Holding Company, Inc., a Michigan corporation with its principal place of business in Michigan.

5. Defendant Lake Orion is a Michigan limited liability company with its principal place of business in the state of Michigan. Upon information and belief, the members of Lake Orion are Paul D. Kessler and Ten Ten Holdings, LLC.

6. Defendant Oxford is a Michigan limited liability company with its principal place of business in the state of Michigan. Upon information and belief, the members of Oxford are Paul D. Kessler and Ten Ten Holdings, LLC.

7. Defendant Lapeer is a Michigan limited liability company with its principal place of business in the state of Michigan. Upon information and belief, the members of Lapeer are Paul D. Kessler and Ten Ten Holdings, LLC.

## II. JURISDICTION AND VENUE

8. BKC operates and franchises restaurants throughout the World. BKC's franchise operations are conducted and supervised from its World Headquarters located in Miami, Florida. BKC and Defendants have carried on a continuous course of direct communications by mail, e-mail and by telephone through BKC's World Headquarters in Miami, Florida.

9. The course of dealing between BKC and its franchisees, including Defendants, shows that decision-making authority is vested in BKC's World Headquarters in Miami, Florida.

10. Defendants negotiated with BKC in Miami, Florida for the acquisition of long-term franchise agreements and other written agreements with the knowledge that they would benefit from their affiliation with BKC.

11. Defendants voluntarily entered into franchise relationships with BKC which envisioned continuing and wide-reaching contacts with BKC in Florida, including regulation of their franchised businesses, from BKC's World Headquarters in Miami, Florida.

12. Defendants have purposefully availed themselves of the benefits and protection of Florida law by entering into written agreements with BKC which expressly provide that Florida law will govern any disputes between the parties.

13. The various Defendants have violated the Lanham Act, which has caused damages to BKC at its headquarters in Miami, Florida, by pirating the Burger King® trademarks after termination or expiration of the Franchise Agreements. These breaches have caused damage to BKC in Miami, Florida.

14. This Court has jurisdiction over this action based upon:

   (a) Section 39 of the Lanham Act, 15 U.S.C. §1121, and 28 U.S.C. §§1331, 1337, and 1338(a), for the claims arising out of Defendants' violations of Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§1114 and 1125(a);

   (b) 28 U.S.C. §1338(b), and the doctrine of supplemental jurisdiction as codified in 28 U.S.C. §1367, for the claims arising out of Defendants' common law unfair competition and Defendants' breach of contract, and;

   (c) 28 U.S.C. §1332, because BKC and Defendants are citizens of different

3

states and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

15. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. §1391 and the forum selection clauses agreed to by the parties in their written agreements at issue in this case.

16. Defendants have agreed in writing that in any litigation to enforce the terms of the operative written agreements between BKC and Defendants, BKC, as the prevailing party, shall be paid by Defendants all costs, including attorneys' fees, incurred as a result.

17. BKC has engaged undersigned counsel and has agreed to pay counsel reasonable attorneys' fees for all services rendered in this action and otherwise in connection with enforcing the operative agreements between BKC and Defendants.

18. All conditions precedent to the institution of this action have been satisfied, discharged, excused, and/or waived.

### III. THE BKC MARKS

19. To identify the source, origin and sponsorship of BKC's facilities, products, and services, BKC has extensively employed, caused to be advertised and publicized throughout the United States certain distinctive symbols as trademarks and service marks (the "BKC Marks"). BKC owns and was the first to adopt and use, the BKC Marks as trademarks and service marks and all right, title and interest in and to the BKC Marks and the design, decor and image of BURGER KING® Restaurants remains vested solely in BKC.

20. BKC operates and franchises BURGER KING® Restaurants using the BKC Marks on signs, menu boards, posters, translights, uniforms, plates, cups, tray liners and other items and in advertising to the public through television, radio and print media and the internet.

21. Set forth below is an abbreviated listing of the BKC Marks registered to BKC in the United States Patent and Trademark Office:

| Reg. No. | Mark | Issue Date |
| --- | --- | --- |
| 0782990 | HOME OF THE WHOPPER | 1965 (renewed through 2025) |
| 0869775 | BURGER KING | 1969 (renewed through 2019) |
| 0899775 | WHOPPER | 1970 (renewed through 2020) |
| 0901311 | BURGER KING logo | 1970 (renewed through 2020) |
| 1057250 | BURGER KING logo | 1977 (renewed through 2017) |
| 1062368 | WHOPPER JR. | 1977 (renewed through 2017) |
| 1076177 | BURGER KING | 1977 (renewed through 2017) |
| 1081348 | HAVE IT YOUR WAY | 1978 (renewed through 2018) |
| 1550398 | CROISSAN'WICH | 1989 (renewed through 2019) |
| 1785694 | CHICKEN TENDERS | 1993 (renewed through 2013) |
| 2428846 | BURGER KING Crescent Logo | 2001 (renewed through 2021) |

22. The registrations of the BKC Marks are currently in full force and effect, and BKC has given notice to the public of the registration of the BKC Marks as provided in 15 U.S.C. §1111.

23. Pursuant to franchise agreements between BKC and its franchisees, including Defendants, BKC grants its franchisees a limited license and authority to use and display the BKC Marks, but only in such manner and at such locations and times as are expressly authorized by BKC. In no event is a franchisee authorized to use the BKC Marks after the expiration or termination of its franchise. Such unauthorized use is expressly prohibited under the terms of all BKC franchise agreements, including Defendants' operative franchise agreements with BKC.

24. BKC and its franchisees have spent many millions of dollars in the United States and abroad advertising and promoting BKC's restaurants, services and products.

25. The substantial investment made in the BKC Marks has resulted in valuable good will for the BKC Marks and for the restaurants, products and services bearing those marks. BKC products and services have met with popular approval and, as a result of BKC's extensive sales,

advertising, promotion and publicity, the public is familiar with the BKC Marks. The products and services associated with the BKC Marks are understood by the public to be produced, marketed, sponsored, supplied by and/or affiliated with BKC.

### IV.  THE BURGER KING SYSTEM

26. BKC has developed a comprehensive restaurant operating system for all BKC franchisees worldwide in order to protect the image of BURGER KING® Restaurants and to ensure uniform, high quality standards. The detailed specifications and procedures of the "Burger King System" are set forth in BKC's Manual of Operating Data (the "OPS Manual").

27. Every BKC franchisee is required by its franchise agreement to operate its franchise in accordance with the specifications and procedures contained in the OPS Manual. The OPS Manual sets forth in detail the mandatory BKC restaurant operating standards, specifications and procedures, including rules governing areas such as food preparation and handling, cleanliness, health, sanitation, quality and speed of service. In addition to these strict quality, service and cleanliness requirements, the OPS Manual prescribes specified training procedures to ensure that these requirements are met. The OPS Manual is a confidential BKC document which a franchisee is permitted to have only during the term of the franchise agreement.

28. BKC offers a broad range of services to its franchisees in order to monitor and assist a franchisee's compliance with these standards, including training for various levels of personnel at "Burger King University" in Miami, Florida as well as other regional and local training and instructional programs. This enables BKC to safeguard the integrity of BURGER KING® Restaurants, the Burger King System and the BKC Marks.

29. Integral to BKC's compliance and assistance program are periodic inspections

and consultations undertaken by BKC personnel specially trained to observe and advise in all areas of restaurant operating procedure. Pursuant to BKC's Restaurant Visitation Process, action plans are issued after a restaurant inspection is conducted. These action plans serve as a training opportunity for the franchisee and as a quality assurance process for BKC to ensure that critical quality, service and cleanliness standards are being met by the franchisee. Each BURGER KING® Restaurant Franchise Agreement confers upon BKC the right to enter the restaurant premises to perform this vital function.

30.     As a result of its substantial expenditures of money and effort in developing and implementing the Burger King System, BKC has established a high reputation and a positive image with the public as to the quality of products and services available at BURGER KING® Restaurants, which reputation and image have been, and continue to be, valuable assets of BKC. BKC strives to maintain that reputation through its careful selection of authorized franchise owners, facilities and locations and its careful supervision over the manner and quality of its restaurant service.

## V. BKC'S WRITTEN AGREEMENTS WITH DEFENDANTS

### A. *LAKE ORION FRANCHISE AGREEMENT*

31.     Defendant Lake Orion owned and operated one (1) restaurant as a franchised BURGER KING® Restaurant (the "Lake Orion Restaurant") using BKC's systems and names, including service marks and trademarks, in accordance with the terms and conditions of a BURGER KING® Restaurant Franchise Agreement as assigned (collectively the "Lake Orion Franchise Agreement").

32.     The Lake Orion Restaurant number, location, commencement date of the Lake Orion Franchise Agreement and Conditional Consent to Assignment of Franchise Agreements

and leases are set forth below:

| Restaurant No. | Restaurant Location | Date of Franchise Agreement | Date of Assignment |
|---|---|---|---|
| BK #4252 | 1155 South Lapeer Road, Lake Orion, MI 48360 | 3/10/05 | 10/5/12 |

### B. OXFORD FRANCHISE AGREEMENT

33. Defendant Oxford owned and operated one (1) restaurant as a franchised BURGER KING® Restaurant (the "Oxford Restaurant") using BKC's systems and names, including service marks and trademarks, in accordance with the terms and conditions of a BURGER KING® Restaurant Franchise Agreement and subsequent Agreements to Extend Franchise Agreement (collectively the "Oxford Franchise Agreement").

34. The Oxford Restaurant number, location, commencement date of the Oxford Franchise Agreement and Agreements to Extend Franchise Agreement are set forth below:

| Restaurant No. | Restaurant Location | Date of Franchise Agreement | Date of Agreement to Extend Franchise Agreement until 12/15/15 |
|---|---|---|---|
| BK #6866 | 583 S. Lapeer Rd., Oxford, MI 48371 | 6/14/99 | 12/31/2011 |

### C. LAPEER FRANCHISE AGREEMENT

35. Defendant Lapeer owned and operated one (1) restaurant as a franchised BURGER KING® Restaurant (the "Lapeer Restaurant") using BKC's systems and names, including service marks and trademarks, in accordance with the terms and conditions of a BURGER KING® Restaurant Franchise Agreement as assigned (collectively the "Lapeer Franchise Agreement").

36. The Lapeer Restaurant number, location, commencement date of the Lapeer Franchise Agreement and Conditional Consent to Assignment of Franchise Agreements and Leases are set forth below:

8

| Restaurant No. | Restaurant Location | Date of Franchise Agreement | Date of Conditional Consent to Assignment |
|---|---|---|---|
| BK #2509 | 727 South Main Street, Lapeer, MI 48446 | 6/23/98 | 10/5/12 |

37. The Lake Orion Franchise Agreement, Oxford Franchise Agreement and Lapeer Franchise Agreement are collectively referred to as the "Franchise Agreements." Additionally, the Lake Orion Restaurant, Oxford Restaurant and Lapeer Restaurant are collectively referred to as the "Restaurants."

### E. GUARANTIES

38. Pursuant to written guaranties, Kessler and Ten Holdings, jointly and severally, unconditionally and irrevocably personally guaranteed to BKC the performance of each and every obligation of the Lake Orion Franchise Agreement, Oxford Franchise Agreement and Lapeer Franchise Agreement (the "Guaranties").

### VI. RELEVANT TERMS OF FRANCHISE AGREEMENTS

39. Under the terms of the Lake Orion Franchise Agreement and Lapeer Franchise Agreement, Defendants Lake Orion and Lapeer are obligated, at their own expense throughout the term of the Franchise Agreements, to maintain their respective restaurants in good condition and repair in accordance with BKC's current repair and maintenance standards. Likewise, Defendants Lake Orion and Lapeer are obligated to improve, alter, and remodel the Restaurants to bring them into conformance with the national and local plans, specifications and/or other standards for new or remodeled BURGER KING® restaurants as may be reasonably changed and defined from time to time by BKC.

40. BKC has the right to default a franchisee, with a 30-day cure period, in the event a franchisee fails to maintain a restaurant in good condition and repair in accordance with BKC's repair and maintenance standards. Likewise, BKC has the right to default a franchisee, with a

9

30-day cure period, in the event a franchisee fails make all improvements or remodels as determined by BKC to be reasonably necessary.

## VII. DEFAULTS UNDER THE FRANCHISE AGREEMENTS

41. By letter dated June 8, 2015, BKC notified Defendant Lake Orion that it was in default of its obligations under the Lake Orion Franchise Agreement for its failure to maintain the parking lot to BKC's repair and maintenance standards, as provided for in the Lake Orion Franchise Agreement (the "Lake Orion Notice of Default"). Additionally, for its failure to remodel, improve, and alter the exterior of the restaurant to confirm with BKC's current image.

42. By letter dated December 4, 2015, BKC notified Defendant Lapeer that it was in default of its obligations under the Lapeer Franchise Agreement for its failure to maintain the parking lot in compliance with BKC's standards of operation (the "Lapeer Notice of Default"). Additionally, for its failure to maintain the order confirmation unit ("OCU") in working order.

43. These failures constitute material acts of default by Defendants Lake Orion and Lapeer under their respective Franchise Agreements.

## VIII. TERMINATION OF THE FRANCHISE AGREEMENTS

44. Despite the Lake Orion Notice of Default and Lapeer Notice of Default, Defendants failed to cure the breaches under the Franchise Agreements.

45. Accordingly, by letter dated January 15, 2016, BKC notified Defendants Lake Orion, Lapeer, Kessler and Ten Holdings that the Franchise Agreements for BK ## 4252 and 2509 (the "Terminated Restaurants") terminated effective January 15, 2016 (the "Confirmation of Termination").

46. BKC has demanded full adherence to the post-termination covenants contained in the Franchise Agreements, requiring Defendants to, among other things, immediately cease and

desist from all use of the BKC Marks at the Restaurants.

47. Terminated or expired franchisees are prohibited from identifying themselves as either a current or former BURGER KING® Franchisee, from using any of BKC's trade secrets, promotional materials, the BKC Marks, or any mark confusingly similar.  Terminated franchisees are further required, upon expiration of their BURGER KING® Restaurant Franchise Agreement(s), to immediately make such removals or changes in signs and the building as BKC shall request so as to effectively distinguish the building and premises from its former appearance and from any other BURGER KING® Restaurant.

48. Defendants have failed to adhere to the post-termination covenants of the Franchise Agreements, which require Defendants to, among other things, immediately cease and desist from all use of the BKC Marks at the Restaurants and to de-identify the Restaurants.

### IX. EXTENSION AND EXPIRATION OF THE BK #6866 FRANCHISE AGREEMENT

49. Additionally, pursuant to its terms, the Oxford Franchise Agreement expired on June 7, 2010.  Thereafter, pursuant to two separate Agreements to Extend Restaurant Franchise Agreement, the parties extended the expiration date to December 15, 2015 (the "Extension").

50. The Extension required Defendants Oxford, Kessler and Ten Holdings to continue to operate BK #6866 pursuant to the same terms and conditions of the Oxford Franchise Agreement.

51. Despite the fact that the Oxford Franchise Agreement has expired and that Oxford, Kessler and Ten Holdings no longer have the right to use the BKC Marks or operate BK #6866 as a BURGER KING® Restaurant, Oxford, Kessler and Ten Holdings have failed to de-identify the Oxford Restaurant and otherwise comply with their post-termination obligations under the Oxford Franchise Agreement.

52. Additionally, Oxford, Kessler and Ten Holdings have not returned their OPS Manual and other operational manuals to BKC as required by the Oxford Franchise Agreement.

## X. LIKELIHOOD OF CONSUMER CONFUSION AND DECEPTION

53. Defendants have not tendered to BKC or removed all BURGER KING® signs, logos, menu boards, posters, translights, uniforms, plates, cups, tray liners, and other items bearing the BKC Marks, name, symbols, or slogans, or which are otherwise identified with BURGER KING® Restaurants.

54. The continued use and display of the BKC Marks or any items associated with the BURGER KING® name, symbols, or slogans is without BKC's license or consent, and has caused or is likely to cause mistake, confusion, or deception in the minds of the public as to source, affiliation and/or sponsorship. Additionally, upon seeing the familiar BKC Marks, through the unauthorized use thereof, consumers will be deceived into concluding that the products and services sold at Defendants' restaurants are made or supplied by BKC, are prepared in the prescribed BKC manner and subject to BKC's supervision, are sponsored or endorsed by BKC, and bear the BKC Marks pursuant to BKC's authority and permission. Such impressions are calculated to and will have a material influence on customers' purchasing decisions, inducing them to patronize Defendants' restaurants in reliance on the goodwill, reputation and appeal of BKC.

55. By reason of the foregoing, BKC has suffered damages, in an amount presently unknown yet substantial. BKC no longer is the source or sponsor of Defendants' restaurants and does not endorse them.

56. BKC is unable to control the nature and quality of the goods and services at the Terminated Restaurants.

12

57. BKC will suffer serious, immediate and irreparable harm if the willful infringement of the BKC Marks is not immediately enjoined. BKC's goodwill and reputation will suffer drastically by virtue of the public's identification of BKC with the management and operation of the Terminated Restaurants. BKC exercises strict quality control over every phase in the marketing of BURGER KING® products and services, from specification of ingredients, to the supervision of food preparation and handling, to the maintenance of strict standards as to cleanliness, health, sanitation and quality of service. The carefully nurtured image which BKC now enjoys will be irretrievably injured by any association with the Terminated Restaurants, which no longer is subject to BKC's control and supervision.

58. The sale of products and services under the BKC Marks at the Terminated Restaurants poses an immediate threat to the distinct, exclusive image BKC has created at great expense for its franchisees. BURGER KING® Restaurants, services, and products are known by the BKC Marks which are emblematic of their distinctive source. BURGER KING® Restaurants enjoy a special appeal to consumers which will be diluted by the existence of infringing restaurants with products and services bearing the distinctive BKC Marks. The intangible, but commercially indispensable, value that the BURGER KING® Restaurants now enjoy will be severely undermined by the operation of the Terminated Restaurants, which makes unauthorized use of the BKC Marks.

59. Consumer confusion as to the source or sponsorship of restaurants bearing the BKC Marks will be attended not only by an inevitable loss of product distinctiveness, image and goodwill, but will also cause a diversion of sales from BKC. The economic injury to BKC resulting from such diversion is incalculable and, as such, is an additional source of irreparable harm.

## COUNT I - LANHAM ACT INFRINGEMENT
### (AGAINST DEFENDANTS)

60. BKC re-alleges and incorporates Paragraphs 1 through 59 above as if fully set forth herein.

61. Defendants' acts at the Restaurants constitute infringements of BKC's registered trademarks and service marks in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114.

## COUNT II - LANHAM ACT FALSE DESIGNATIONS
### (AGAINST DEFENDANTS)

62. BKC re-alleges and incorporates Paragraphs 1 through 59 above as if fully set forth herein.

63. Defendants' acts at the Restaurants constitute false designations of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

## COUNT III - COMMON LAW TRADEMARK INFRINGEMENT
### (AGAINST DEFENDANTS)

64. BKC re-alleges and incorporates Paragraphs 1 through 59 above as if fully set forth herein.

65. Defendants' acts at the Restaurants constitute unlawful trademark and service mark infringements under the common law.

## COUNT IV - COMMON LAW UNFAIR COMPETITION
### (AGAINST DEFENDANTS)

66. BKC re-alleges and incorporates Paragraphs 1 through 59 above as if fully set forth herein.

67. Defendants' acts at the Restaurants constitute unfair competition under the common law.

### COUNT V - BREACH OF THE LAPEER FRANCHISE AGREEMENT
### (AGAINST DEFENDANT LAPEER)

68. BKC re-alleges and incorporates Paragraphs 1 through 52 above as if fully set forth herein.

69. Defendant Lapeer has breached the Lapeer Franchise Agreement by failing to maintain BK # 2509 as required by BKC's repair and maintenance standards, as set forth in the Lapeer Franchise Agreement.

70. This breach has directly and proximately caused loss and damage to BKC.

### COUNT VI - BREACH OF THE LAKE ORION FRANCHISE AGREEMENT
### (AGAINST LAKE ORION)

71. BKC re-alleges and incorporates Paragraphs 1-52 above as if fully set forth herein.

72. Lake Orion has breached the Lake Orion Franchise Agreement by failing to maintain BK # 4252 as required by BKC's repair and maintenance standards, as set forth in the Franchise Agreement.

73. Additionally, Lake Orion has breached the Lake Orion Franchise Agreement by failing to remodel, improve and alter the exterior of BK # 4252, as required by the Franchise Agreement, to conform to the current image of BKC.

74. These breaches have directly and proximately caused loss and damage to BKC.

### COUNT VII - BREACH OF THE OXFORD FRANCHISE AGREEMENT
### (AGAINST OXFORD)

75. BKC re-alleges and incorporates Paragraphs 1-52 above as if fully set forth herein.

76. Oxford has breached the Oxford Franchise Agreement by failing to de-identify BK # 6866 post-expiration of the Oxford Franchise Agreement, as set forth in the Oxford

Franchise Agreement.

77. This breach has directly and proximately caused loss and damage to BKC.

### COUNT VIII - BREACH OF THE GUARANTIES
### (AGAINST KESSLER AND TEN HOLDINGS)

78. BKC re-alleges and incorporates Paragraphs 1 through 52 above as if fully set forth herein.

79. As discussed herein, Defendant Lake Orion has failed to maintain and repair BK # 4252, as required by the Lake Orion Franchise Agreement. Further, Defendant Lake Orion has failed to remodel, improve and alter the exterior of BK # 4252, as required by the Lake Orion Franchise Agreement.

80. Additionally, Defendant Lapeer has failed to maintain and repair BK # 2509, as required by the Lapeer Franchise Agreement.

81. Lastly, Defendant Oxford has failed to de-identify BK # 6866 post-expiration, as required by the Oxford Franchise Agreement.

82. Pursuant to the Guaranties, Kessler and Ten Holdings, jointly and severally, unconditionally and irrevocably personally guaranteed to BKC the performance of each and every obligation of the Franchise Agreements, should the various Defendants fail to perform such obligations.

83. The failure of Lake Orion, Oxford and Lapeer to abide by the terms of their respective agreements, and the failure of Kessler to ensure compliance or to themselves comply with the Franchise Agreements, constitute breaches under the Guaranties.

84. As a direct and proximate result of the breaches of the Guaranties, BKC has been damaged.

**DEMAND FOR ATTORNEYS' FEES**

85. The written agreements at issue provide that the prevailing party is entitled to its attorneys' fees and costs. Pursuant to those provisions, BKC hereby demands that it be reimbursed by Defendants for all costs and expenses (including attorneys' fees) relating to prosecution of this action.

WHEREFORE, Burger King Corporation demands judgment against Defendants Paul D. Kessler, Ten Ten Holdings, LLC, PDK King of Lake Orion, LLC, PDK King of Oxford, LLC, and PDK King of Lapeer, LLC as follows:

1. For preliminary and permanent injunctions enjoining Defendants, and all persons acting on their behalf, in concert with them, or under their control, from:

    (a) manufacturing, packaging, distributing, selling, advertising, displaying, or promoting any product or service bearing any of the BKC Marks, or any colorable imitation thereof at the Restaurants;

    (b) displaying or using any of the BKC Marks to advertise or promote the sale of, or to identify, the Restaurants, or any product or service provided therein; and

    (c) making in any manner whatsoever any statement or representation, or performing any act, likely to lead members of the public to believe that Defendants, the Restaurants and the products and services provided therein, are in any manner, directly or indirectly, associated, affiliated, or connected with, or licensed, sponsored, authorized, or approved by Burger King Corporation.

2. For preliminary and permanent injunctions directing Defendants, and all persons acting on their behalf, in concert with them, or under their control, to:

    (a) recall and deliver up to Burger King Corporation all signs, banners, labeling, packaging, advertising, promotional, display, and point-of-purchase materials which bear, or make reference to, any of the BKC Marks, or any colorable

        imitation of the BKC Marks;

(b)     recall and deliver up to Burger King Corporation all copies and editions of the OPS Manuals that are in her actual or constructive, direct or indirect, possession, custody or control, including all supplements and addenda thereto, and all other materials containing restaurant operating instructions, restaurant business practices, or plans of Burger King Corporation;

(c)     allow Burger King Corporation, at a reasonable time, to enter the premises of the Restaurants and make whatever changes, including removal of tangible assets, that are necessary to distinguish the premises from its appearance as BURGER KING® Restaurants;

(d)     account and pay over to Burger King Corporation all gains, profits and advantages derived by Defendants from their trademark and service mark infringement, breaches of contract and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. §1117 and by the controlling principles of common law.

3.     For money damages, plus three times additional actual damages BKC has sustained by reason of Defendants' trademark and service mark infringement, breaches of contracts and unfair competition, pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117 for BK #6369;

4.     For punitive damages because of the willful nature of Defendants actions with respect to the Restaurants;

5.     For pre-judgment interest and Burger King Corporation's reasonable attorneys' fees incurred in protecting its rights in this action in accordance with the terms of the Franchise Agreements and, because of the willful nature of the infringement, pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117;

6. For an order enjoining Defendants from operating any hamburger business in violation of any applicable covenants against competition contained in the various agreements;

7. For an order directing Defendants to file with the Court, and to serve on Burger King Corporation's counsel within ten days after service of any injunction or order issued herein, or within such a reasonable time as the Court shall direct, a report, in writing and under oath, setting forth in detail the manner in which Defendants have complied with such injunction or order;

8. For money damages against Defendants for their breaches of the Franchise Agreements and various written guaranties;

9. For all costs, disbursements, and expenses of this action; and

10. For all such other relief as this Court may deem just and proper.

Dated this 15th day of January, 2016.

        Respectfully submitted,

        GENOVESE JOBLOVE & BATTISTA, P.A.
        *Attorneys for Burger King Corporation*
        4400 Miami Tower
        100 Southeast Second Street
        Miami, Florida  33131
        Telephone:   (305) 349-2300
        Facsimile:    (305) 349-2310

        **s./ Darci E. Cohen**
        _____
        Michael D. Joblove
        Florida Bar No.: 354147
        mjoblove@gjb-law.com
        Nina Greene
        Florida Bar No.: 72079
        ngreene@gjb-law.com
        Darci E. Cohen
        Florida Bar No.: 90971
        dcohen@gjb-law.com

**2000 – 706 / 130v2**